**Richard CARTER, Petitioner,**

v.

**Robert J. HENDERSON, Respondent.**

**No. 83 Civ. 3777 (WK).**

United States District Court,
S.D. New York.

Feb. 12, 1985.

Richard Carter, pro se.

Sylvia Peck, The Legal Aid Society, Federal Defender Services Unit, New York City, for plaintiff.

Office of the Dist. Atty. by Steven Chananie, Asst. Dist. Atty., New York City, for defendant.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Richard Carter petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. The Court appointed counsel by Order dated November 28, 1983, but because of some disagreements between petitioner and counsel, petitioner has submitted several *pro se* memoranda in addition to those submitted by counsel. After consideration of all the papers so submitted, and for the reasons which follow, we deny the writ.

Petitioner was convicted, following a jury trial in Supreme Court, New York County, of three counts of Attempted Murder (Penal Law § 110.00 and former Penal Law §§ 125.25 and 125.30), four counts of Robbery in the First Degree (Penal Law § 160.15), one count of Assault in the First Degree (Penal Law § 120.10), one count of Felonious Possession of a Weapon (former Penal Law § 265.05), and one count of Bail Jumping in the First Degree (Penal Law § 215.57). In April, 1977 petitioner was sentenced to ten concurrent prison terms: three of from fifteen years to life on the attempted murder conviction, four of from five to fifteen years on the robbery convictions, an indeterminate term of ten years on the assault conviction, an indeterminate term of five years on the weapons convic-

tion, and an indeterminate term of three years on the bail jumping conviction.

Petitioner appealed his convictions to the Appellate Division, First Department, New York Supreme Court, which affirmed without opinion on May 9, 1978. *People v. Carter* (1st Dept.1978) 63 A.D.2d 866, 404 N.Y.S.2d 933. On June 21, 1978 leave to appeal to the New York Court of Appeals was denied, *People v. Carter* (1978) 45 N.Y.2d 777, 409 N.Y.S.2d 1035, 381 N.E.2d 170, and on October 16, 1978, the United States Supreme Court denied petitioner's petition for a writ of *certiorari. Carter v. New York* (1978) 439 U.S. 914, 99 S.Ct. 287, 58 L.Ed.2d 261.

On April 27, 1981, petitioner moved in the trial court to set aside his sentence pursuant to § 440.20 of the New York Criminal Procedure Law. On June 5, 1981, without having held a hearing, Justice Burton Roberts denied the motion in a written decision and, on July 27, denied petitioner's motion to reargue. Leave to appeal to the Appellate Division was denied on July 16, 1981. On May 12, 1983, petitioner filed the instant petition for a writ of *habeas corpus.*

Petitioner's conviction arose out of an October 24, 1971 robbery of a Manhattan record store in which he and two accomplices, each of whom was armed, robbed the store's employees and patrons. During the robbery one of the robbers was shot and later died, one of the police officers was shot and wounded, and several police officers were fired at from a distance of six feet. Eventually, all three participants in the robbery surrendered to the police.

Petitioner's principal contention is that his sentence of from fifteen years to life is so grossly disproportionate to the crime of attempted murder as to violate the Eighth Amendment's prohibition against cruel and unusual punishment.

## DISCUSSION

Petitioner, who has previously been convicted of aggravated assault and battery (1950) and of assault and battery with intent to murder (1964) was in the instant case convicted of three counts of attempted

murder in the first degree (attempting to murder an on-duty police officer), four counts of robbery in the first degree, one count of the felonious possession of a weapon, and one count of felonious bail jumping. The facts upon which his sentence is based have already been set forth, but deserve elaboration: Petitioner and his accomplices set out to rob a record store; when one of the intended victims proved recalcitrant, petitioner and his accomplices went out and kidnapped an innocent passer-by and threatened him with death in the presence of the recalcitrant victim in order to induce the latter to become more cooperative. When uniformed police arrived to interrupt these proceedings, petitioner and his accomplices shot at them at point-blank range, wounding one of them but—fortunately—not killing any of them.

Quite understandably, petitioner does not contend that 15 years to life is "cruel and unusual" punishment for this particular conduct. Instead, citing *Solem v. Helm* (1983) 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637, he claims that the *statutory scheme* upon which his sentence was based is defective. Petitioner totally misconceives the authority upon which he relies.

■ *Solem v. Helm* —which dealt with a life sentence imposed on an alcoholic (who had never been convicted or even accused of a crime of violence) for cashing a $100 bad check while intoxicated—commands us only to examine each individual sentence to determine whether it is "disproportionate" in light of the facts upon which it is based and other objective criteria. It does not command us to examine the statutory scheme pursuant to which a particular sentence was imposed. The surest indication of this distinction is the Court's observation that:

> We agree ... that "[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare," ...
> (Emphasis in original.)

*Id.* at 3009.

Clearly, if petitioner's understanding of that case were correct—if it commanded

*habeas corpus* courts to examine statutory sentencing schemes for their rationality—successful challenges would not be "exceedingly rare," they would be routine.

The *Solem* opinion is replete with indications that the court's major concern was whether or not—in the case before it—the sentence imposed was disproportionate to the particular offense committed. Such concern is evident in the court's application of the objective criteria it deemed relevant. In evaluating the "gravity of the offenses and the harshness of the penalty," the court noted that defendant's crime was "one of the most passive felonies a person could commit," *id.* at 3012, but that his sentence was the most severe punishment that the state could have imposed on any criminal for any crime. *Id.* at 3013. In considering the sentences which could be imposed on other criminals in the same jurisdiction, the court noted that other crimes for which life imprisonment was authorized—murder, treason, first degree manslaughter, first degree arson, and kidnapping—were generally considered more serious and more deserving of punishment than the crime of uttering a "no account check," *id.* at 3014. Defendant, however, had been treated in the same manner as, or more severely than, criminals who had committed far more serious crimes. Finally, the court compared sentences imposed for commission of the same crime in other jurisdictions and concluded that defendant was treated more severely than he would have been in any other state.

■ In applying the analytical framework commanded by *Solem* to the instant case, we find petitioner's sentence to be constitutionally sound. In evaluating the "gravity of the offense and the harshness of the penalty," we note that petitioner received the challenged sentence of 15 years to life for each of three counts of attempted murder. The deliberate attempt to take the life of a human being is unquestionably among the most serious of crimes. For such behavior petitioner received the minimum· sentence possible under the law.

Such sentence is not in our thinking unduly harsh.

We next examine the sentences imposed on other criminals in the same jurisdiction. Petitioner points out that at the time of his sentence, other inchoate crimes carried a lesser sentence than did attempted murder of a police officer. We need hardly repeat that a deliberate, yet unsuccessful, attempt to kill a person reasonably carries a harsher penalty than the unsuccessful attempt to kidnap, rape, or commit arson.

Finally, under the last criteria set forth in *Solem,* we compare the sentences imposed for commission of the same crime in other jurisdictions. According to the data supplied by petitioner, the possible sentences for attempted murder range from life in prison with no parole to an indeterminate prison term of up to five years in prison. *See* Memorandum of Law for Petitioner submitted by The Legal Aid Society. Minimum mandatory sentences range from one to twenty years while maximum terms range from five to fifty. Petitioner's sentence of 15 years to life is not unusually harsh when compared with possible sentences in other states.

In summary, we find petitioner's claim unpersuasive and deny the writ.

SO ORDERED.